# State of New York
# Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 55
Richard J. Sassi II,
        Appellant,
     v.
Mobile Life Support Services,
Inc.,
        Respondent.

Jonathan R. Goldman, for appellant.
Matthew Cohen, for respondent.

DiFIORE, Chief Judge:

Correction Law article 23-A and Executive Law § 296 (15) protect certain individuals convicted of criminal offenses from unlawful discrimination in employment and licensing. In this appeal, the issue is whether plaintiff adequately alleged that

- 1 -

defendant, plaintiff's former employer, violated the antidiscrimination statutes based on the denial of plaintiff's application for employment following the completion of his criminal sentence. Applying our liberal pleading standard for a pre-answer motion to dismiss pursuant to CPLR 3211 (a) (7), and giving plaintiff the benefit of every favorable inference, we conclude that the courts below erred in concluding the complaint failed to state a cause of action. We therefore reverse the Appellate Division order and deny the motion to dismiss.

Assuming the allegations in plaintiff's verified complaint to be true as we must in this procedural context, between 2014 and 2016 plaintiff Richard J. Sassi II, a former police officer, was employed by defendant Mobile Life Support Services, Inc., an ambulance service. When plaintiff applied to work for Mobile Life in 2014, he disclosed that he "was facing a misdemeanor charge relating to allegedly calling in a false emergency to 911" as a police officer in 2012. Defendant hired plaintiff and soon promoted him to a full-time dispatcher position. In early 2016, plaintiff informed his supervisors that his "retrial"[1] on the misdemeanor charge was imminent, and he was subsequently convicted. Throughout, plaintiff kept defendant apprised of the status of his trial, his conviction, and the results of a presentence investigation report that recommended against incarceration.

In the complaint, plaintiff averred that, during the period between his conviction and sentencing, he was told by both Mobile Life's chief operating officer (COO) and its human

---

[1] The record does not indicate when the first trial occurred, how it was resolved, or why a retrial was necessary.

resources director that he was a "good employee" and, in the "unlikely event he was sentenced to jail time," they would allow him to use accrued benefit time and "re-instate him upon his release." On May 18, 2016, plaintiff was "sentenced to 60 days' incarceration" and immediately remanded to custody. When his wife promptly informed defendant about the sentence, she was told that plaintiff could use accrued benefit time until he "came back" to work. Soon thereafter, however, while plaintiff was incarcerated, defendant terminated him for "job abandonment." Following his release from jail, plaintiff contacted a Mobile Life employee "who advised that he wanted plaintiff to return to work," but indicated "the supervisors were divided" on the issue. "[U]nable to regain his job" through that contact, plaintiff subsequently met with the COO and the human resources director who advised him that because Mobile Life "had previously terminated others who had been incarcerated, they had to be consistent and terminate plaintiff." Plaintiff then commenced this action contending that defendant violated Correction Law article 23-A and Executive Law § 296 (15) by refusing to "re-employ" him, seeking damages and reinstatement to his former position.

Mobile Life moved to dismiss the complaint for failure to state a claim under CPLR 3211 (a) (7), generally asserting, among other things, that Executive Law § 296 (15) and Correction Law article 23-A—which prohibit discrimination based on a previous conviction—were inapplicable because plaintiff was convicted during his employment. Supreme Court granted the motion and dismissed the complaint and, on plaintiff's appeal,

the Appellate Division affirmed (176 AD3d 886 [2d Dept 2019]).  This Court granted leave to appeal (34 NY3d 913 [2020]).

When reviewing a pre-answer motion "to dismiss the complaint for failure to state a cause of action, we must give the pleadings a liberal construction, accept the allegations as true and accord the plaintiff[] every possible favorable inference" (*Chanko v American Broadcasting Cos. Inc.*, 27 NY3d 46, 52 [2016], citing *Goshen v Mutual Life Ins. Co. of N.Y.*, 98 NY2d 314, 326 [2002]).  Giving plaintiff "the benefit of all favorable inferences which may be drawn from [the] pleading," this Court determines only whether the alleged facts "'fit within any cognizable legal theory'" (*Campaign for Fiscal Equity v State of New York*, 86 NY2d 307, 318 [1995], quoting *Leon v Martinez*, 84 NY2d 83, 87-88 [1994]).  The question is whether the complaint adequately alleged facts giving rise to a cause of action, "not whether [it] properly labeled or artfully stated one" (*Chanko*, 27 NY3d at 52, citing *Leon*, 84 NY2d at 88).

Where applicable, the Correction Law and the Human Rights Law protect individuals convicted of criminal offenses from discrimination in the context of applications for employment or licensing, subject to certain exceptions.  In 1976, the legislature enacted Correction Law article 23-A and Executive Law § 296 (15) in furtherance of "the 'general purposes' of the Penal Law," including "'the rehabilitation of those convicted' and 'the promotion of their successful and productive reentry and reintegration into society'" (*Matter of Acosta v New York City Dept. of Educ.*, 16 NY3d 309, 314 [2011], quoting Penal Law § 1.05 [6]; *see Matter of Bonacorsa v Van Lindt*, 71

NY2d 605 [1988]).  Correction Law § 751 broadly states that article 23-A applies to "any application by any person for a license or employment at any public or private employer, who has previously been convicted of one or more criminal offenses in this state or in any other jurisdiction."  Correction Law § 752 contains similar language, stating that "[n]o application for any license or employment, and no employment or license held by an individual, to which the provisions of this article are applicable, shall be denied or acted upon adversely by reason of the individual's having been previously convicted of one or more criminal offenses."  Executive Law § 296 (15), the Human Rights Law, incorporates article 23-A, making it "an unlawful discriminatory practice for any person . . . to deny any license or employment to any individual by reason of [that individual] having been convicted of one or more criminal offenses . . . when such denial is in violation of [Correction Law article 23-A]."

The statutes do not categorically preclude consideration of a prospective employee's criminal history and expressly permit the denial of employment or licensing if there is (1) a "direct relationship" between the previous criminal offense and the specific employment or license, or (2) if granting the request for employment or a license "would involve an unreasonable risk" to the property, safety, or welfare "of specific individuals or the general public" (Correction Law § 752).  Thus, under the statutory scheme, reliance on a previous criminal offense when denying an application for employment or a license is not necessarily unlawful (*see e.g. Bonacorsa*, 71 NY2d at 614-615).  Whether an exception applies depends on factors identified in Correction Law § 753 such as, among other things,

the relationship between the specific employment duties and the criminal offense as well as the amount of time that has elapsed since the offense occurred (Correction Law § 753 [1] [b], [c], [d]).[2]   Under these provisions, when filling positions, public and private employers must treat job applicants with prior convictions equitably "while also protecting society's interest in assuring performance [of job duties] by reliable and trustworthy persons" (*Bonacorsa*, 71 NY2d at 611).

On this appeal, based on the arguments preserved by the parties, the only question before us is whether plaintiff adequately alleged a violation of the antidiscrimination statutes.  While the legislative history suggests that the legislature may not have considered this specific scenario—a request for reemployment with a pre-incarceration employer— we conclude that the factual allegations are sufficient to survive defendant's pre-answer motion to dismiss.  Nothing in the statutory language, scheme, or legislative history indicates that the legislature intended for article 23-A or Executive Law § 296 (15) to exempt a previous employer from the reach of those statutes.  Instead, the statutes broadly refer to "any application by any person for . . . employment at any public or private employer, who has previously been convicted of one or more criminal offenses"

---

[2] Because this appeal arises in the context of a pre-answer motion to dismiss, the record does not reveal the role, if any, such considerations played here in the decision to deny employment.  In a case involving a former employee, the individual's record with that employer and the circumstances surrounding the prior separation from employment would also be relevant.  Our conclusion that defendant's motion to dismiss should have been denied concerns no more than that procedural question and should not be interpreted as expressing a view on the merits of plaintiff's claim.

(Correction Law § 751). Thus, this case does not fall outside the scope of the antidiscrimination statutes merely because plaintiff previously worked for Mobile Life.

Moreover, we disagree with defendant's contention that, even read liberally, the complaint fails to adequately allege a post-conviction "application" by plaintiff. The term "application" is not defined in the pertinent statutes but, read in the context of employment and given its ordinary meaning, the word is reasonably interpreted to refer to a request for employment. Employment applications may take various forms in different contexts depending on, among other things, the nature of the relevant industry, the manner in which new employees are solicited or open positions advertised, application protocols implemented by the employer, and the relationship, if any, between a prospective employer and employee. The application requirement is met if, viewed in context and from an objective standpoint, the employer would have reasonably understood the communications from the prospective employee to be a request for employment.

In this case, plaintiff alleged that he was terminated for job abandonment soon after he was incarcerated. Applying our liberal standard, the complaint further may be read to allege that, after he completed his sentence, he applied for reemployment in the dispatcher position that he previously held, and Mobile Life denied the application solely because of the prior conviction. Plaintiff alleged that he was advised that, although some supervisors wanted him to return, defendant's policy was to terminate employees who had been incarcerated. Plaintiff's allegation that he was told that his request was being denied due

solely to his conviction supports the inference that he was not denied employment for some other reason (for example, because the position had been filled during his incarceration).

Defendant offered an alternate interpretation of the allegations in the complaint, contending they allege a "discriminatory termination" and do not reflect a post-conviction application for employment. To that end, defendant asserts that plaintiff's post-incarceration meeting with the COO and the human resources director was a "termination meeting" intended to explain why he was fired—not a discussion between an applicant and prospective employer. Viewed in this light, defendant argues that the statutes were never triggered because there was no "application" by a person who was "previously convicted" of a criminal offense; there was, in essence, only one employment determination—a termination—that was concededly lawful and did not implicate the antidiscrimination statutes as it arose from a conviction during employment.

To be sure, throughout this litigation plaintiff acknowledged that, upon his incarceration, he could be lawfully terminated by Mobile Life. In a scenario like this, a plaintiff's complaint must allege facts supporting the inference that an application for employment was made and denied—and not merely that there was protest of a termination decision—because these statutes do not preclude an employer from lawfully terminating an employee such as plaintiff who by virtue of his conviction and sentence could not report to work. At this pre-answer stage of the litigation, we conclude only that plaintiff's allegations in that regard were adequate. Whether Mobile Life may ultimately establish that a reasonable employer would not have understood plaintiff's request as an application

triggering the statutory protections is not the question before us; to answer that question at this pre-answer stage of litigation, we would have to view the complaint in the light most favorable to defendant—an approach antithetical to the governing standard of review on this motion to dismiss.

Accordingly, the order of the Appellate Division should be reversed, with costs, and defendant's motion to dismiss the complaint pursuant to CPLR 3211 (a) (7) denied.

GARCIA, J. (concurring):

I join the majority opinion but write separately to make clear my understanding of

the guidelines for assessing claims based on the relevant antidiscrimination statutes. First,

Executive Law § 296 (15) and Correction Law article 23-A—which prohibit discrimination

based on a "previous" conviction—do not apply to plaintiff's termination based on conviction during employment (*see Hodge v New York City Tr. Auth.*, 180 AD3d 490 [1st Dept 2020]). Second, it is necessary for the plaintiff to allege that he was applying for an open position. It is not sufficient that plaintiff sought reinstatement or merely requested that he be rehired into his prior position. An existing position must be available at the time of the "application." Lastly, prior employment history—here, termination for "job abandonment"—may indeed be relevant in any later hiring decision (*see* majority op at 6 n 2). With that understanding, I agree that, applying our most forgiving of standards, the motion to dismiss the complaint at this stage of the litigation was properly denied.

Order reversed, with costs, and defendant's motion to dismiss the complaint pursuant to CPLR 3211 (a) (7) denied. Opinion by Chief Judge DiFiore. Judges Rivera, Fahey, Garcia, Wilson, Singas and Cannataro concur, Judge Garcia in a concurring opinion.

Decided October 12, 2021